Filed 5/14/21

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THEODORE BRUNI, | B305689 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No.19STCV35693) |
| v. | |
| THE EDWARD THOMAS HOSPITALITY CORPORATION, et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Hennig Ruiz & Singh, Hennig Kramer Ruiz & Singh, Rob A. Hennig, Sereena J. Singh, Samuel Marion Brown and Helen Mei You for Plaintiff and Appellant.

Ballard Rosenberg Golper & Savitt, John J. Manier, David J. Fishman and Janet S. Soultanian for Defendants and Respondents.

_____

Plaintiff and appellant Theodore Bruni (Bruni) appeals a judgment of dismissal following the sustaining of a demurrer by defendants and respondents The Edward Thomas Hospitality Corporation and Neptune's Walk, LLC, dba Hotel Casa del Mar (collectively, the Hotel).

Bruni was a restaurant server who alleged he was laid off after about four months when his employer, the Hotel, eliminated all part-time positions. Bruni brought this action alleging a violation of Santa Monica Municipal Code section 4.66.010 et seq.[1] (the recall ordinance), which provides laid off employees that have been employed by the employer for six months or more with a right to be rehired in certain circumstances. We conclude, as did the trial court, that the right of recall does not apply here because Bruni did not work for the Hotel for "six months or more" before he was involuntarily separated from employment for economic reasons. (*Ibid.*)

Bruni had a prior stint of employment with the Hotel that lasted about ten months, which ended when he voluntarily resigned due to scheduling difficulties. However, the purpose of the recall ordinance is to protect employees who were involuntarily laid off due to economic circumstances—not to protect employees who quit for personal reasons. Therefore, we conclude that Bruni's earlier period of employment that ended with his voluntary resignation does not count toward the six-month minimum period of employment, leaving him ineligible for recall under the ordinance. Accordingly, Bruni failed to state a cause of action under the recall ordinance.

---

[1] All undesignated section references are to the Santa Monica Municipal Code.

Additionally, Bruni attempted to state a *Tameny*[2] tort claim based on the Hotel's allegedly wrongful failure to rehire him in violation of public policy. We conclude the *Tameny* claim was not well pled because there was no violation of the recall ordinance on which the *Tameny* claim was based. Moreover, a *Tameny* claim must be predicated on a fundamental public policy that is expressed in a constitutional or statutory provision (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1995 (*Gantt*)), as opposed to a public policy that finds expression in a municipal ordinance.

Therefore, the judgment of dismissal is affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Overview of the recall ordinance.*

In the wake of the economic downturn following the September 11, 2001 terrorist attacks, the City of Santa Monica adopted the recall ordinance, which established a preference for laid off employees and gave them the right to be rehired in specified circumstances.[3] The recall ordinance, which is now

---

[2] *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 recognized a cause of action in tort where an employee is wrongfully discharged in contravention of fundamental public policy.

[3] We note that certain California municipalities, including Los Angeles and San Diego, have recently instituted ordinances that provide a laid-off employee with the right to be recalled to work. (See, e.g., L.A. Ord. No. 186,602 (COVID-19 Right of Recall), eff. June 14, 2020, adding § 200.30 et seq. to the L.A. Muni. Code; San Diego Ord. No. 0-21231, relating to COVID-19 worker recall and retention, eff. Sept. 8, 2020, and adding § 311.0101 et seq. to S.D. Muni. Code.) Also, during the pendency of this appeal, on April 16, 2021, the Governor signed Senate Bill

3

found in chapter 4.66 of the Santa Monica Municipal Code, applies to employers doing business at a location in areas of the City of Santa Monica that are defined as "the Coastal Zone or Extended Downtown Core with gross receipts over five million dollars in the year 2000 for that location."  (§ 4.66.020.)

The ordinance defines the term "laid off employee" as "[a]ny employee who was employed by the employer for six months or more and whose most recent separation from active service occurred after September 11, 2001, and was due to lack of business, a reduction in force or other, economic, non-disciplinary reason."  (§ 4.66.010.)[4]

---

No. 93 (2021-2022 Reg. Sess.), which requires covered employers to offer employees laid off due to the COVID-19 pandemic available positions on a preference basis.  (Lab. Code, § 2810.8, added by Stats. 2021, ch. 16, § 1, eff. Apr. 16, 2021.)  The newly enacted statute expressly provides that it does not "prohibit a local government agency from enacting ordinances that impose greater standards than, or establish additional enforcement provisions to, those prescribed by this section."
(Lab. Code, § 2810.8, subd. (f).)

[4]      Although the recall ordinance had its genesis in the events of September 11, 2001, the text of the ordinance does not limit its reach to employees who were laid off as a consequence of that economic downturn.  The parties disagree as to whether the recall ordinance was intended to apply to separations such as Bruni's, which was concededly unrelated to the attacks of September 11, 2001.  We do not address that issue because we affirm the judgment of dismissal based on Bruni's failure to satisfy the "six months or more" work requirement (§ 4.66.010), which made him ineligible for recall under the ordinance.

Section 4.66.030, which creates a right of recall, states in relevant part: "(a) **Preference for Laid Off Employees**. An employer shall offer in writing, to the last known address of laid off employees, all positions which are or become available after the effective date of this Chapter for which the laid off employees are qualified. A laid off employee is qualified for a position if the employee: (1) held the same or similar position at the same site of employment at the time of the employee's most recent separation from active service with the employer; or (2) is or can be qualified for the position with the same training that would be provided to a new employee hired into that position. The employer shall offer positions to laid off employees in an order of preference corresponding to categories (1) and (2) in the preceding sentence. Where more than one employee is entitled to preference for a position, the employer shall offer the position to the employee with the greatest length of service with the employer at the employment site."[5]

---

[5] With respect to remedies, section 4.66.050 states: "Any person, including the City, may enforce the provisions of this Chapter by means of a civil action for injunctive and monetary relief. The burden of proof in such cases shall be preponderance of the evidence. Any person who violates or aids another person to violate the provisions of this Chapter is liable for each and every such offense for the actual damages suffered by any aggrieved party or for statutory damages in the sum of five hundred dollars, whichever is greater, and shall be liable for such attorneys' fees and costs as may be determined by the court in addition thereto. The court may also award punitive damages to any plaintiff, including the City, in a proper case as defined by Civil Code Section 3294. The burden of proof for purposes of punitive damages shall be clear and convincing evidence." We note the City is not a party to this case.

2.  *Pleadings*:  *the original complaint.*

On October 7, 2019, Bruni filed this action against the Hotel alleging two causes of action:  violation of the recall ordinance; and a *Tameny* tort claim for failure to rehire him in violation of public policy.  The complaint included the following allegations:

Bruni worked for the Hotel as a part-time server from approximately June 2017 to September 2017, and as a full-time server from then to April 2018, at which time he voluntarily resigned due to scheduling difficulties.

In July 2018, Bruni was hired by the Hotel as a part-time server.  Less than four months later, on October 31, 2018, he was laid off on the ground the company was eliminating all part-time positions in its food and beverage operations.  Thus, Bruni was laid off by the Hotel for an economic, non-disciplinary reason.

Based on information and belief, at least two server positions became available at the Hotel after Bruni was laid off, and he was qualified for those positions.  Taking into account Bruni's earlier period of employment with the Hotel that ended with his voluntary resignation in April 2018, at the time of the layoff Bruni had been an employee of the Hotel for more than six months.  However, after Bruni was laid off, the Hotel did not extend to him any written offers of employment for available server positions.

3. *The Hotel's demurrer.*

The Hotel demurred to the complaint in its entirety.  It contended Bruni's first cause of action for violation of the recall ordinance failed as a matter of law because Bruni did not satisfy the ordinance's "six months or more" employment requirement.  The Hotel argued, inter alia, that the necessary period of

6

employment of six months cannot be aggregated because the purpose of the ordinance was to promote stability in the workforce. "Workforce stability is not promoted by forcing an employer to rehire an employee who works intermittently for the employer. Here, [Bruni] voluntarily quit his employment with [the Hotel], returned for three months, and is now claiming an entitlement to rehire in the name of workforce stability. He is clearly not among the employees that the [o]rdinance seeks to protect."

As for the *Tameny* claim, the Hotel contended no cause of action was stated because even assuming the recall ordinance has been violated, the ordinance did not inure to the benefit of the general public because of its extremely limited application to layoffs in the tourism industry following the September 11, 2001 terrorist attacks.

4. *The trial court's ruling.*

On January 6, 2020, the matter came on for hearing. The trial court sustained the Hotel's demurrer to both causes of action with leave to amend. With respect to the first cause of action for violation of the recall ordinance, the trial court ruled: "The employee worked less than 6 months and the Ordinance does not apply." With respect to the second cause of action for wrongful failure to rehire in violation of public policy, the court stated: "There is no violation of public policy."

5. *Subsequent proceedings.*

On January 16, 2020, Bruni filed a first amended complaint that realleged the same two causes of action. On February 10, 2020, the parties stipulated that the first amended complaint would be stricken so as to enable Bruni to proceed with an appeal from the order sustaining the demurrer to the original complaint.

7

Pursuant to the stipulation, the trial court struck the first amended complaint, and thereafter entered a judgment of dismissal. Bruni filed a timely notice of appeal from the judgment.

## CONTENTIONS

Bruni contends: the trial court misconstrued the clear and unambiguous language of the recall ordinance by adding an eligibility requirement of employment continuity, and assuming arguendo the language of the ordinance is ambiguous, the ambiguity cannot be resolved on demurrer; and the ordinance codifies fundamental public policy and therefore gives rise to a *Tameny* tort claim for failure to rehire him in violation of public policy.

## DISCUSSION

1. *Standard of appellate review.*

This appeal requires us to determine whether the recall ordinance's provision that a laid off employee must have been employed for "six months or more" (§ 4.66.010) may be satisfied by aggregating separate periods of employment. The interpretation of the ordinance presents a question of law that we review de novo. (*Tower Lane Properties v. City of Los Angeles* (2014) 224 Cal.App.4th 262, 268.)

Likewise, our review of the order sustaining the demurrer is de novo (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162), with the plaintiff bearing the burden of demonstrating that the demurrer was sustained erroneously. *(Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)[6]

_____

[6] Bruni elected to stand on his pleadings in the trial court and does not contend in his appellate briefs that leave to amend is warranted. Therefore, there is no issue in that regard. (See

8

2.  *No cause of action stated for violation of the recall ordinance.*

a.  *Principles of statutory interpretation.*

The principles of statutory construction apply equally to the construction of ordinances.  (*Russ Bldg. Partnership v. City & County of San Francisco* (1988) 44 Cal.3d 839, 847, fn. 8.)  Thus, the usual rules guide our interpretation of the recall ordinance, and specifically, its requirement that to be eligible for recall, an employee must have worked for the employer for "six months or more" before being laid off.  (§ 4.66.010.)

"As in any case involving statutory interpretation, our fundamental task is to determine the [legislative] intent so as to effectuate the law's purpose.  [Citation.]  'We begin with the text of the statute as the best indicator of legislative intent' [citation]), but we may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results.  [Citation.]"  (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 27 (*Simpson*).)

---

*Fischer v. Time Warner Cable Inc.* (2015) 234 Cal.App.4th 784, 790 [an appellant bears the burden on appeal of showing a reasonable possibility exists that the complaint can be successfully amended].)

9

b. *Bruni's theory that his two periods of employment should be aggregated would contravene the intent of the ordinance and would lead to an absurd result.*

As indicated, the recall ordinance defines the term "laid off employee" as "[a]ny employee *who was employed by the employer for six months or more and whose most recent separation from active service . . .* was due to lack of business, a reduction in force or other, economic, non-disciplinary reason." (§ 4.66.010, italics added.) Under a literal reading of the ordinance, which is essentially what Bruni urges, it is arguable that it is sufficient if (1) the employee worked for the employer an *aggregate* time of six months or more, and (2) the employee's most recent separation from employment was due to an economic decision by the employer. However, we may reject a literal construction that is contrary to the legislative intent apparent in the ordinance, or that would lead to absurd results. (*Simpson*, *supra*, 49 Cal.4th at p. 27.)

Santa Monica Ordinance No. 2031, adopted on December 11, 2001, and presently codified at section 4.66.010 et seq., declared the intent of the ordinance as follows: "WHEREAS, the nation has, for many months, been in economic decline; and [¶] WHEREAS, the terrorist attacks of September 11, 2001 exacerbated the adverse economic conditions; and [¶] WHEREAS, tourism and visitor-serving industries have suffered particularly dire economic consequences; and [¶] WHEREAS, many low-income Santa Monica workers are employed in visitor-serving industries; and [¶] WHEREAS, in Santa Monica, these industries are concentrated in the Coastal Zone and extended downtown core; and [¶] WHEREAS, most low-income workers employed by visitor-serving businesses in these areas are heads of household

10

who bear primary responsibility for supporting their families; and [¶] WHEREAS, in recent weeks, many of these workers have been laid off without any reassurance that they will be recalled to their jobs when economic conditions improve; and [¶] WHEREAS, the City has an interest in promoting a stable workforce within the community and within its primary industries; and [¶] WHEREAS, heads of household and others who are unemployed and therefore cannot support their families must rely on public resources to meet their basic needs; and [¶] WHEREAS, requiring the fair recall of Santa Monica workers will promote the community's welfare, [¶] NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF SANTA MONICA DOES HEREBY ORDAIN AS FOLLOWS."

Thus, the clear intent of the recall ordinance was to protect workers who were involuntarily laid off due to economic circumstances beyond their control. The recall ordinance was not intended to protect individuals who voluntarily quit for personal reasons; such individuals are not within the class of persons that the recall ordinance was intended to protect. This conclusion militates against including a previous period of employment that ended with a voluntary resignation in calculating whether the employee worked for "six months or more" before being laid off.

As indicated, the complaint alleged that Bruni's earlier period of employment, about 10 months spanning June 2017 through April 2018, ended when he "voluntarily resigned from his position due to scheduling difficulties." As discussed, however, the ordinance was not intended to protect employees who voluntarily quit their jobs. We therefore conclude that Bruni's earlier period of employment, which ended with his voluntary resignation, cannot be combined with his subsequent

11

shorter period of employment to satisfy the "six months or more" requirement. (§ 4.66.010.)

We also observe that Bruni's theory that his earlier period of employment that ended in his resignation should be counted toward the six-month period would lead to an absurd result. Under his approach, an individual who worked for an employer decades ago for at least six months, before quitting, and then returned to the same employer and worked for a single day, before being laid off, would be entitled to recall under the ordinance. Clearly, that is not what the ordinance was intended to accomplish.

It is unnecessary, for purposes of this case, to reach the issue of whether discrete periods of employment may ever be aggregated to satisfy the "six months or more" requirement of section 4.66.010. We simply conclude that an earlier period of employment that ended in a voluntary resignation cannot be aggregated with a later period of employment that ended in a layoff to meet the six-month minimum period of employment.

c. *Other issues not reached.*

In view of Bruni's failure to satisfy the recall ordinance's six-month work requirement, it is unnecessary to address the Hotel's arguments concerning the ordinance's applicability or inapplicability to seasonal workers.

We also note that because the ordinance applies to "employers doing business at a location in the Coastal Zone or Extended Downtown Core with gross receipts over five million dollars in the year 2000 for that location" (§ 4.66.020), the question arises as to whether the ordinance has become unworkable because its benchmark is based on a business's revenues more than two decades ago, and without any indication

12

as to how the ordinance would apply to newly established businesses. However, those issues are also beyond the scope of the case at bench.

3. *No cause of action stated against the Hotel for its alleged failure to rehire Bruni in accordance with the public policy expressed in the recall ordinance.*

Bruni's second cause of action alleged a wrongful failure by the Hotel to rehire him in violation of the public policy expressed in the recall ordinance of "promoting a stable workforce in the Santa Monica community."

As discussed in the preceding section, Bruni failed to allege facts showing his eligibility for recall under the ordinance. Given Bruni's inability to allege that the recall ordinance applies to him, it necessarily follows that he cannot state a *Tameny* claim predicated on an alleged violation of the public policy expressed in the recall ordinance.

Moreover, the *Tameny* claim fails because a municipal ordinance cannot serve as the predicate for a *Tameny* tort claim. In *Gantt*, our Supreme Court recognized that courts in *Tameny* actions "may not declare public policy without a basis in either constitutional or statutory provisions. A public policy exception carefully tethered to fundamental policies that are delineated in *constitutional or statutory provisions* strikes the proper balance among the interests of employers, employees and the public.[7] *The employer is bound, at a minimum, to know the fundamental public policies of the state and nation as expressed in their*

---

[7] Statutorily authorized regulations that effectuate the Legislature's purpose may also be included as a source of fundamental public policy. (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 82.)

13

*constitutions and statutes*; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law.  Employees are protected against employer actions that contravene fundamental state policy.  And society's interests are served through a more stable job market, in which its most important policies are safeguarded." (*Gantt*, *supra*, 1 Cal.4th at p. 1095, italics added.)

Additionally, the mere nonrenewal of an employment contract—as opposed to the unlawful termination of an employment contract in violation of public policy—is not a basis for a *Tameny* claim.  (*Motevalli v. Los Angeles Unified School Dist.* (2004) 122 Cal.App.4th 97, 112-113; *Touchstone Television Productions v. Superior Court* (2012) 208 Cal.App.4th 676, 684.)

For all these reasons, the Hotel's alleged failure to rehire Bruni in accordance with the recall ordinance cannot give rise to a *Tameny* claim.

## DISPOSITION

The judgment of dismissal is affirmed.  Respondents shall recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**

SALTER, J.*

We concur:

EDMON, P. J.

EGERTON, J.

_____

* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.